MATTER OF E—

In DEPORTATION Proceedings

A-5886545

*Decided by Board July 27, 1961*

**Suspension of deportation—Discretionary denial—Behavior reflecting undesirability as permanent resident.**

Suspension of deportation is denied as matter of discretion to alien whose behavior pattern, manifested by record of convictions and arrests, fraudulent procurement of United States birth certificate, and refusal to cooperate with Congressional committee, casts doubt upon his desirability as a lawful permanent resident.

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Two convictions after entry, to wit: Robbery with pistol (two offenses).

## BEFORE THE BOARD

**DISCUSSION:** This is an appeal from the order of the special inquiry officer finding respondent deportable upon the ground stated above and denying his application for suspension of deportation.

Respondent, a 48-year-old married male, a native and citizen of Italy, was admitted to the United States for permanent residence in 1916. It is conceded that respondent is deportable by reason of two convictions—one, January 13, 1933, for robbery with a pistol committed on May 31, 1932, and the second, January 23, 1933, for robbery committed on March 1, 1932. The issue is whether respondent should be granted suspension of deportation.

Respondent was married in 1931 to a citizen of the United States. There are no children of the union. Respondent's wife is not employed and has no independent income. She is allegedly under doctor's care. The nature of the illness is not stated and the treatment appears to consist of "taking things easy." Respondent is a juke box operator. He operates about 28 machines and nets about $8,000 a year. The family assets consist of the juke box business worth about $20,000, a home worth about $16,000, about $2700 in the bank, and an automobile, furniture, *etc.*, worth about $10,000. He has about $4,000 in debts. Respondent was arrested 11 times from 1930

372

o 1933. Five arrests for disorderly conduct resulted in discharges; two arrests for carrying concealed weapons resulted in sentences of 30 to 90 days, respectively; two for assault and robbery were stricken with leave to reinstate; and two resulted in the convictions which formed the basis for the deportation proceedings. As a result of the convictions, respondent was imprisoned. He served over nine years and was released on parole on April 24, 1942. He was given a final discharge in April 1945. Upon respondent's parole from prison, he registered as an alien (May 1, 1942). About this time he procured a birth certificate showing birth in Illinois so that he could obtain a barber's license.

Respondent alleges that from his release on parole in 1942 until July 1946, he was employed by the National Malleable & Steel Castings Company as a steam fitter, earning about $75 a week, and that from July 1946 to September 1952, he was employed by General Motors as a steam fitter at a salary of about $90 a week. (However, a verification of employment reveals that he was employed by Malleable from June 1942 until July 1946, and by General Motors from April 1948 to September 1951. There is thus a period of two years which is not accounted for.) From September 1952 to September 1957, he was employed as a mechanic and a collector of juke box receipts for the A. A. Swingtime Music Company. From September 1957 until the present, he has allegedly been, with his wife, owner of a juke box business under the name of E. & E. Amusement Company.

On February 24, 1959, respondent, in response to a subpoena, appeared before the Select Committee on Improper Activities in the Labor or Management Field, 85th Cong., 2d Sess., and 86th Cong., 1st Sess. Respondent was sworn but on a claim of privilege refused to answer any questions concerning his occupation, the operation of his business, whether S—E—- was his partner, and whether mail was received at a grill owned in part by S—E. When accused by counsel for the Committee of having been set up by Lormar Record Company and as operating with S—E— as the E. & E. Company in a scheme to force operators of juke boxes to purchase records from the Lormar Record Company and to harrass and bring pressure on the operators to make them conform with the wishes of an underworld syndicate, he also took refuge in a claim of privilege.

Before Service officials respondent was questioned concerning his appearance before the Committee and his failure to answer the questions of the Committee. He stated that about eight months before he had been called to Washington, he had been interviewed by an investigator of the Committee and had furnished him with all the records and information requested. Respondent alleged that he had told the investigator that he was the sole owner of E. & E.

Company and that neither S— nor C—E— had anything to do with his juke boxes. His explanation for his refusal to testify before the Committee is ambiguous. The question and answer are set out in full:

Q. Would you care to offer explanation as to why you refused to answer questions there when you had, before that, cooperated fully with Mr. McShane, the Committee investigator?

A. Well, do you want me to be truthful? What choice did I have! I know I was born in Italy; if I had gone up there and answered all them questions—what was I going to answer. So, I figured only one thing for me to do and that is for me to take the Fifth Amendment, because I knew I was going to get in trouble sooner or later. So, I knew what was going to happen is what is happening today. I knew that everything in my business was aboveboard.

At oral argument, counsel stressed the fact that respondent had rehabilitated himself after release from confinement; that there is no derogatory information concerning him since his release except for the refusal to testify before the Congressional committee; that this refusal must be considered in light of the fact that respondent had fully cooperated with the Committee's investigator; that he had been assured by the investigator that he would not be subpoenaed before the Committee; that when he received the subpoena he responded immediately and came without counsel and without discussing it with anyone and that his refusal to testify was due to nervous tension, surprise at being called after the assurance he had received, and the lack of awareness of the purpose of the investigation. Counsel points to respondent's testimony before the Service denying that he was connected with anything illegal or the E— brothers. Counsel points to the favorable factors, the long residence, the absence of derogatory information, the family relationship, respondent's self-support and his accumulation of assets, his lack of knowledge of his native land or the language, and the hardship his wife would endure if he is deported. He contends that the actions before the Committee should not result in respondent being labeled as an undesirable, in view of the positive matters of record.

Despite the favorable factors of record, the long residence, the marriage to a United States citizen, the period of gainful employment, we believe that the application for discretionary relief must be denied. Respondent's record of arrests and convictions, his disregard for law in procuring a birth certificate showing birth in Illinois, and his refusal to cooperate with the Senate Committee reveal a pattern which raises considerable doubt as to respondent's desirability as a legal permanent resident. Respondent's record for a period of over three years reveals convictions for carrying a concealed weapon and robbery with a gun. This period, terminated by his imprisonment for nine years, was followed upon his release by the willful and deliberate procurement of a birth certificate to

374

which he was not entitled. It is indeed significant that incarceration for nine years, reaching the age of 29, and being on parole did not prevent respondent from such deliberate violation of law. Finally, we have the refusal to cooperate with the Senate Committee when it called upon him for assistance. Under such circumstances, it appears to us that a most deserving case, free from any doubt, must be made to justify the grant of a privilege which would absolve an alien from liability to deportation and clear the way to an ultimate application for citizenship. Such a case is not made out.

The fact that respondent testified before the Service that he had no connection with the underworld does not excuse his conduct before the Senate Committee. The Committee sought information at a time when it was attempting to obtain instruction which would enable it to make recommendations for the passage of legislation. Respondent's testimony comes now too late. Moreover, the Committee apparently had before it information contradicting what respondent stated that he had told its investigator. The Committee may have had the ability to test the information respondent now gives. It should have had the chance to compare the testimony he allegedly gave its investigator and the information they had from which they drew contrary conclusions.[1]

We think the application for suspension was properly denied as a matter of discretion. The appeal should be dismissed.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.

---

[1] In view of our disposition, no further inquiry need be made as to the failure to establish the nature of employment between July 1946 and April 1948, nor as to the fact that the record contains no clear denial by respondent that he was not set up as part of a device to force companies to buy records from Lormar Company and that the E— brothers had never had some interest in seeing respondent established in business.